**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff,**

        v.

WELKIN ALEXANDER GONZÁLEZ-PÉREZ,

    **Defendant.**

**CRIMINAL NO. 26-253 (RAM)**

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the Government's *Motion* seeking to detain defendant Welkin Alexander González-Pérez ("Defendant" or "Mr. González-Pérez") without bail pending trial. (Docket No. 10). For the reasons set forth below, the Court **GRANTS** the Government's *Motion*. Mr. González-Pérez shall remain detained pending trial.

**I.  BACKGROUND**

On June 11, 2026, a Grand Jury indicted Mr. González-Pérez on one count or Re-entry of Removed Alien in violation of 8 U.S.C. § 1326(a). (Docket No. 1). Defendant, a non-citizen alien as the term is defined in 8 U.S.C. § 1101(a)(3) who has been previously removed from the United States, is accused of attempting to enter the United States without obtaining the express consent of the Secretary of Homeland Security to reapply for admission into the

Criminal No. 26-253 (RAM)                                                    2

United States. Id.

On June 17, 2022, the U.S. Probation Office submitted a pretrial services report on Defendant, which suggested conditions to assure Defendant's appearance and the safety of the community. (Docket No. 12). On June 18, 2022, Magistrate Judge Mariana E. Bauza-Almonte held the detention hearing. (Docket No. 15). Defense counsel argued in favor of setting conditions for release while the Government moved for detention based on risk of flight. Id. After having heard the parties, the Magistrate Judge issued an *Order Setting Conditions of Release*. (Docket Nos. 15 and 16).

That same day, the Government filed a *Motion for Stay of Release Order and for a De Novo Bail Hearing*. (Docket No. 13). Therein, the Government alleged that Defendant is a risk of flight given his two previous attempts to avoid being apprehended by law enforcement in 2025, among other factors. Id. at 2-3. The Court denied the Government's request to stay but granted the request for a De Novo Bail Hearing. (Docket No. 14).

Defendant filed a *Motion in Opposition to Government's Request for Detention* on June 23, 2026. (Docket No. 21). Defendant maintains that his personal history and characteristics support his release.

The Court held the De Novo Bail Hearing on June 24, 2026. After hearing arguments from both parties, the Court found that the case presents a serious risk that the defendant will flee if

released. (Docket Nos. 22 and 24). Accordingly, the Court issued an *Order of Detention Pending Trial* and notified the parties that the present Opinion and Order on the merits would be issued shortly thereafter. (Docket No. 24).

## II.  LEGAL STANDARD

### A. Standard of review for a detention or release order

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

### B. The Bail Reform Act

Pursuant to the Bail Reform Act of 1984 (the "Act"), a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

Section 3142(f)(2) authorizes the court to hold a detention hearing upon government motion or *sua sponte* in cases that involve "a serious risk that such person will flee" **or** "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). The standard of proof for detention due to dangerousness is clear and convincing evidence. Id. **In turn, the standard of proof for detention due to risk of flight is preponderance of the evidence**. *See* United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

When determining whether there are conditions of release to assure the defendant's appearance and the safety of the community during a detention hearing, judicial officers must take into consideration the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

Under the Act, a decision to detain must be supported by written findings of fact and a statement of reasons and is immediately reviewable. *See* 18 U.S.C. § 3142(i).

Criminal No. 26-253 (RAM)                                                    5

## III. DISCUSSION

### A. An analysis of the Section 3142(g) factors indicates that detention pending trial is proper

#### a. The nature and circumstances of the offense charged

Mr. González-Pérez was indicted with one count of Re-Entry of Removed Alien in violation of 8 U.S.C. 1326(a). (Docket No. 6). If convicted, Defendant will face up to two years of imprisonment. Albeit a serious charge, the crime is not violent in nature and the sentencing exposure is not remarkably heigh. Thus this factor weighs in favor of release.

#### b. The weight of the evidence against Defendant

The weight of the evidence against Defendant is strong and weighs in favor of detention. Namely, per testimony provided at the De Novo Bail Hearing, Defendant was found on a vessel heading towards Puerto Rico with 40 individuals onboard, all of whom were citizens of the Dominican Republic (like Mr. González-Pérez himself), Haiti or Uzbekistan. The biometrics review revealed Defendant's prior history of improper entry into the United States. Moreover, Defendant does not have any immigration documents allowing him to legally enter or remain in the United States, nor does he have any pending petitions with the Bureau of Citizenship and Immigration Services.

### c. Defendant's personal history and characteristics

Mr. González-Pérez is a 25-year-old male, in good health, with no known history of substance abuse. He is a citizen of the Dominican Republic with a fourth-grade education who claims to have worked as a farmer all his life in the Dominican Republic. Defendant identifies as a resident of the Dominican Republic, although he previously lived in San Juan, Puerto Rico for one year with his consensual partner, Ms. Marangely Correa-Flores ("Ms. Correa"). He was born in the Dominican Republic, where he, his father, and his three siblings reside. His mother is a resident of Puerto Rico. No history of foreign travel was reported. Mr. González-Pérez is a native Spanish speaker with no fluency in the English language.

The Government provided testimony and corroborating evidence to establish that on May 25, 2025, Mr. González-Pérez was detained during an Immigration Enforcement Operation in a cockfighting arena in Villa Capri, San Juan. During the operation, Defendant fled in an attempt to evade detention, suffering injuries in the process. He was transferred to Centro Médico Hospital (the "Hospital") to receive medical attention. While being treated at the Hospital on May 26, 2025, restraints were removed from his hands and feet to provide him with proper care. Once freed of the restraints, Mr. González-Pérez fled again, running down the hallway, leaving through an open gate and climbing a fence. Law

enforcement agents lost sight of Defendant and were unable to intercept him at that time. Defendant was subsequently detained and ultimately removed from the United States on November 4, 2025.

Mr. González-Pérez's alienage, standing alone, is not inherently probative of a serious risk of flight nor is it a factor that "tip[s] the balance either for or against detention." United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985). Instead, it is evidence of Defendant's two attempts to abscond to avoid law enforcement that establishes a serious risk of flight.

Another fundamental question to determine whether Defendant represents a serious risk of flight is what ties Defendant has with the United States in general, and with Puerto Rico in particular. When tasked with assessing an alien defendant's ties to the United States, courts should consider the following factors: "how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens." U.S. v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990). Defendant does not own any property in Puerto Rico. Moreover, his only relatives in Puerto Rico are his mother and consensual partner. The record does not reflect that Mr. González-Pérez was employed in Puerto Rico. Conversely, most of his immediate family is in the Dominican Republic and he is a citizen of that Country. Considering these

facts, the Court finds that Mr. González-Pérez lacks meaningful ties to Puerto Rico.

Therefore, given Defendant's history of attempting to evade detention and the absence of significant ties to Puerto Rico, Mr. González-Pérez's history and characteristics favor detention. *C.f.* United States v. Vazquez-Amarante, No. CR 22-452 (RAM), 2026 WL 322628, at *5 (D.P.R. Feb. 6, 2026) (granting pre-trial release to a citizen and resident of the Dominican Republic charged with drug trafficking and money laundering given his strong ties to Puerto Rico, lack of criminal history, and voluntary surrender).

## B. No set of conditions that will reasonably assure the appearance of the person as required

Defendant has offered the following conditions: (1) Ms. Correa as a third-party custodian; (2) a $10,000 unsecured bond; and (3) home detention with electronic monitoring. The Court is of the view that these conditions are insufficient to assure his appearance at trial for the following reasons. First, as discussed above, Mr. González-Pérez is a non-resident alien with no property, employment, or strong community ties in Puerto Rico. Defendant has only been in a relationship with Ms. Correa for one year and most of his immediate family is in the Dominican Republic.

Second, Defendant is subject to deportation. Immigration authorities, i.e., the Immigration and Customs Enforcement ("ICE"), are not bound to stay deportation in deference to this

judicial proceeding. *See* United States v. Vasquez-Benitez, 919 F.3d 546 (D.C. 2019) ("ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial"). Although ICE may temporarily decline to deport an individual during criminal proceedings, district courts cannot order ICE to do so. *See* United States v. Veloz-Alonso, 910 F.3d 266, 268-270 (6th Cir. 2019). However, as noted by the U.S. District Court for the District of Massachusetts, "it is perhaps an unusual situation where the U.S. Attorney's Office, having indicted a defendant, runs the risk that he will be removed by ICE before the conclusion of their prosecution […] [s]uch scenario, however, is not barred by the BRA [Bail Reform Act] or any intersection with the INA [Immigration and Naturalization Act]." United States of America v. Waad Alzarei, 2019 WL 2642824, at *3 (D. Mass. 2019).  If deported, Mr. González-Pérez may very well choose not to return to face the charges in this case.

### IV.  CONCLUSION

For the foregoing reasons, the Government's *Motion* at Docket No. 10 is **GRANTED**. Defendant shall remain detained pending trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of June 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge